UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN A.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C24-5774-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

      Plaintiff appeals the ALJ's January 17, 2024, decision finding him not disabled. In December 2021, Plaintiff applied for disability insurance benefits alleging disability starting March 15, 2020. Tr. 17. After conducting a hearing, the ALJ issued a written decision finding Plaintiff's anxiety disorder, substance use disorders, depressive disorders, attention-deficit-hyperactivity disorder (ADHD), obsessive-compulsive disorder (OCD) and insomnia are severe impairments; Plaintiff retains the residual functional capacity (RFC) to perform medium work with numerous mental limitations, and is not disabled because he can perform past relevant work as a bartender helper and other jobs in the national economy. Tr. 17-32.

      Plaintiff contends the Court should reverse and remand the case for an award of benefits because the ALJ erroneously rejected his testimony about the severity of his psychological impairments, and the RFC determination thus does not account for all of his limitations. Dkt. 7 at

ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS - 1

1. The Commissioner disagrees and argues the ALJ reasonably discounted Plaintiff's subjective complaints. The Court finds the ALJ harmfully erred, and **REVERSES** the Commissioner's final decision. The Court further finds the appropriate remedy is **REMAND** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The ALJ found Plaintiff's medically determinable impairments could reasonably cause the symptoms he alleged. Tr. 22. The ALJ did not find malingering and was thus required to provide clear and convincing reasons to discount Plaintiff's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 113637 (9th Cir. 2014); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (the ALJ must identify "which testimony [the ALJ] found not credible" and explain "which evidence contradicted that testimony."). The ALJ need not "believe every allegation of disabling pain," *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021) (citation omitted), or to "perform a line-by-line exegesis" of Plaintiff's testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff argues the ALJ erroneously rejected his testimony based upon a summary of the medical evidence rather than providing clear and convincing reasons. Dkt. 9. The Commissioner argues the ALJ reasonably found Plaintiff's activities, improvement, and the medical record contradict Plaintiff's testimony, and the Court should affirm and dismiss this case. Dkt. 14

At the hearing the ALJ conducted, Plaintiff testified his ability to care for himself depends on his level of anxiety on a given day. Tr. 50. On days where he has a panic attack or has especially bad anxiety, he relies on friends and family members to assist him. Tr. 50. He frequently cannot leave his house due to his anxiety. Tr. 50. On what Plaintiff described as "good days," he works with Door Dash and Uber, but stated his work is "very, very inconsistent." Tr. 51. Plaintiff indicated he has severe panic attacks at least twice a week, which exacerbates his social anxiety, and fears of having a panic attack in public. Tr. 51. He described panic attacks can cause flu-like symptoms, lasting up to 72 hours, and also cause overwhelming feelings like he is dying. Tr. 52, 57. Aside from Valium, other medications have been ineffectual in controlling his anxiety and panic attacks. Tr. 56. However, due to addiction problems, Plaintiff cannot take benzodiazepines or opioid medications. Tr. 53. When taking medications which cause drowsiness as a side-effect, and on bad anxiety days, Plaintiff states he does not drive as he believes he would pose a danger to himself and others. Tr. 53-55. Plaintiff describes being unable to concentrate for more than a minute at a time on any activity. Tr. 54.

The ALJ rejected Plaintiff's testimony based upon a review of the medical evidence, which the ALJ found included evidence undercutting Plaintiff's testimony such as improvement with treatment, Plaintiff's activities, and MSE finding. Tr. 27-28.

    **1.**    **Improvement with Treatment**

The ALJ acknowledged the record shows Plaintiff's mood, anxiety, and ability to

concentrate varied. An ALJ may not reject a claimant's testimony "merely because symptoms wax and wane in the course of treatment," as cycles of improvement and debilitating symptoms are common for those suffering severe mental impairments. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Thus, it "is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* Instead, the ALJ must interpret reports of "improvement" within the context of the claimant's overall well-being and the nature of his symptoms. *Id.* The ALJ may not simply interpret reports of "improvement" in mental health symptoms to mean the impairments no longer seriously affect the claimant's ability to function in a workplace, particularly where the "improvement" takes place in the context of ongoing treatment and limiting environmental stressors. *Id.* Thus, under *Garrison* an ALJ should not discount a claimant's testimony based upon improvement or variability of symptoms unless the record reasonably shows the claimant has so improved that he or she can consistently perform substantial gainful work activity.

The ALJ discounted Plaintiff's testimony based upon symptom improvement during the time Plaintiff took benzodiazepine medications. These medications led to drug addiction and the need to place Plaintiff into in-patient substance abuse treatment in order to stop him using these drugs. *See* Tr. 27(citing Tr. 703, 694, 681, 605 (records indicating Plaintiff is taking benzodiazepines to treat his anxiety)). The record shows that even when Plaintiff was taking benzodiazepines, he still struggled with severe anxiety.

In addition to addiction problems, Plaintiff's medical sources attempted to taper his Valium usage because the drug had become less effective, and because despite taking more than prescribed, Plaintiff was still having difficulty getting out of bed. Tr. 562, 594. Plaintiff's

medical sources also observed the drug caused "slurring [of] his speech, spontaneous and tangential speech," and told Plaintiff he was "nodding off" in classes. Tr. 399, 493, 1068. In June 2022, Plaintiff entered a residential treatment program to treat benzodiazepine use disorder, which included Valium. 1065, 1155. In July 2022, Plaintiff presented to the emergency room with symptoms of withdrawal caused by tapering down his Valium dosage. Tr. 1044.

While Plaintiff was in a residential substance abuse treatment facility for benzodiazepine dependency, Tr. 1186, a provider observed Plaintiff was "laying in his room while his peers had gone on a walk. Plaintiff indicated to clinician he was experiencing severe anxiety and stated he did not feel like he could engage in programming today due to experiencing extreme anxiety symptoms." Tr. 1187.

Further, in finding Plaintiff was "more stable" while using Valium, the ALJ cites a portion of the record in which the medical source noted Plaintiff was "sedated and slurred" and external stressors exacerbated his anxiety. Tr. 27 (citing Tr. 605). A September 2020 medical record which the ALJ referenced as evidence that "[Plaintiff] reported that he was feeling better and not as anxious," indicated Plaintiff reported "having some days where it is hard to leave his house" due to anxiety. Tr. 27 (citing Tr. 652). Another September 2020, clinic report indicated Plaintiff had severe anxiety, sweating, and cried. Tr. 656. Thus, even assuming Plaintiff was doing "better," the medical record shows he still reported symptoms that are consistent with his testimony. *See Garrison*, 759 F.3d at 1017 (doing well for purposes of treatment program not related to ability to work); *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011) (responding well to treatment does not correlate with ability to enter the workforce).

Hence the ALJ's findings of improvement is not supported by substantial evidence *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's decision unsupported by

substantial evidence where "paraphrasing of record material is not entirely accurate regarding the content or tone of the record.")

The Court notes the only period of improvement the ALJ cited that falls outside of Plaintiff's use and dependence on benzodiazepines is the brief period he took Modafinil. Tr. 28. After taking Modafinil, in December 2022, it was noted Plaintiff could sleep, focus, and had improved energy throughout the day. Tr. 1863, 1908. However, by March 2023, Plaintiff was again reporting increased anxiety, depression, and trouble sleeping. Tr. 1719. By July 2023, Plaintiff was taking the maximum dose of the medication. Tr. 1297. The brief three-month improvement in Plaintiff's symptoms is not substantial evidence that contradicts Plaintiff's testimony, and the overall record shows Plaintiff continues to suffer significant and serious mental health problems. The Court accordingly finds the ALJ erred in discounting Plaintiff's testimony on the grounds that Plaintiff had improved with treatment.

### 2. Plaintiff's Activities

The Commissioner argues the ALJ rejected Plaintiff's testimony as inconsistent with his activities of daily living and Plaintiff failed to challenge the ALJ's rationale. The ALJ discounted Plaintiff's testimony based upon a discussion of the medical record that included statements Plaintiff made to his providers about his activities. In his opening brief, Plaintiff argued the ALJ erred by rejecting his testimony based upon a review and assessment of the medical record. The Court finds Plaintiff's challenge of the ALJ's assessment of the medical record thus includes Plaintiff's activities that were noted in the medical record. Plaintiff in fact specifically indicated in his opening brief the record shows he can do chores, make meals, leave the home to run errands, and work a few hours for Door Dash or Uber Eats on good days, but not on bad days. However, he disagreed with the ALJ's assessment that this evidence showed he was not disabled.

*See* Dkt.15 at 4-5. The Court thus declines to find Plaintiff waived challenging any finding the ALJ made that Plaintiff's daily activities undercut his testimony.

The Commissioner argues, in any event, that the Court should affirm because the ALJ properly discounted Plaintiff's testimony because Plaintiff was the "chapter chair" at Oxford house, a home for individuals in substance abuse recovery. The ALJ noted Plaintiff reported to a medical provider he was "a chapter chair" but the ALJ made no findings as to what activities the position entailed or how that activity contradicts Plaintiff's testimony. The Commissioner, based upon extra-record research, argues the Court should take judicial notice that a chapter chair is a person who ensures the chapter meets once a month. Even accepting this, this activity does not contradict Plaintiff's testimony that his anxiety can make it difficult to leave his home or regularly perform daily activities. The record does not indicate whether setting monthly meetings is a once-a-month activity taking a few minutes, or something else and the record also does not indicate what interaction with others Plaintiff would have had as a chapter chair. The only information the record contains is a single line in the ALJ's decision indicating Plaintiff was chapter chair for Oxford House. Tr. 1550. The ALJ also made no factual findings showing a chapter chair is equivalent to working a full-time job. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (ALJ erred in discrediting testimony where there was "no indication . . . that the limited activities [Plaintiff] engaged in . . . either comprised a 'substantial' portion of [Plaintiff]'s day, or were 'transferrable' to a work environment"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("daily activities may be grounds for an [inconsistency] finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" (quoting *Fair*, 885 F.2d 597)).

The ALJ and Commissioner also note Plaintiff occasionally worked as a driver for Uber

Eats and DoorDash. The record does not indicate when Plaintiff began working for these services, how often he worked for them, or how consistent Plaintiff's work was. To be sure, Plaintiff indicated he occasionally worked for these services, but the record lacks any indication this regular or consistent full-time work. Rather, Plaintiff testified his work for these services was "very very inconsistent" and the ALJ pointed to no evidence that contradicts this. The Social Security Act does not require total incapacitation, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. While the ALJ may consider "any work activity, including part-time work, in determining whether a claimant is disabled" the ALJ must still link that work activity to which parts of Plaintiff's testimony it contradicted. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *Laborin*, 867 F.3d at 1155. The record here shows Plaintiff's work was very very inconsistent and the record was never developed to show this is not the case. The ALJ accordingly erred in Plaintiff's testimony based upon his work for DoorDash and Uber.

      The ALJ further noted Plaintiff's occasional ability to drive a car contradicts his testimony that some of his medication, not his anti-psychotics and gabapentin, make him "pretty drowsy to the point where I have to be careful not to drive." Tr. 53-54. Plaintiff did not testify he cannot or did not drive a car. Rather he indicated when he takes the medications that make him drowsy, he is careful not to drive. When he tore his rotator cuff, doctors prescribed Plaintiff a medication to manage the pain, which included severe drowsiness as a side-effect that Plaintiff experienced. Tr. 1026. Additionally, doctors repeatedly describe Plaintiff "nodding off" at other points in his treatment. Tr. 332, 403, 675-76. Accordingly, the ALJ erred in rejecting Plaintiff's testimony for this reason.

      3.      **Medical Evidence**

      The Commissioner contends the ALJ correctly found Plaintiff's Mental Status Examination (MSE) findings indicating Plaintiff was alert and fully oriented, was neatly dressed, was cooperative, made good eye contact, and had intact memory contradict Plaintiff's testimony. Over 40 MSE exams describe Plaintiff's mood and affect as anxious repeatedly from 2020 through the end of the available records. *See, e.g.*, tr. 385, 500, 570, 709, 901, 1067, 1229, 1293, 1320. Occasionally Plaintiff was "less anxious than previous times" or even "normal." Tr. 533, 540, 1394. But, even at appointments where Plaintiff's mood was "euthymic" his general anxiety disorder score was above 10, which indicates Plaintiff had moderate anxiety even during times he was doing better. Tr. 1230, 1394; *see Buck*, 869 F.3d at 1049 (noting that a clinical interview and MSE are objective measures in the context of psychiatric evaluations). As discussed above, it is an error for an ALJ to point intermittent periods of improvement as evidence that Plaintiff can work. *Garrison*, 759 F.3d at 1017.

      Additionally, an MSE finding that Plaintiff was alert, neatly dressed, and cooperative is not substantial evidence contradicting Plaintiff's anxiety symptoms. Plaintiff testified he frequently is unable to leave the house due to his anxiety and has panic attacks at least twice a week which leave him incapacitated. Tr. 50-51. Nothing about MSE assessment of being alert or cooperative with medical providers contradicts this testimony. Accordingly, the ALJ erred in rejecting Plaintiff's testimony for this reason.

## CONCLUSION

      The Court finds the ALJ harmfully erred, and the case should thus be remanded. Plaintiff contends the case should be remanded for an award of benefit. The Court has the discretion to remand for benefits if (1) the record is fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons to reject evidence, and (3) if the improperly discredited evidence were credited as true,

the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

However, a Court should remand for benefits only in rare circumstances. *See Treichler v. Colvin,* 775 F3d 1090, 1099 (9th Cir. 2014). The Court should ask if further proceedings would be useful, whether there are outstanding ambiguities and whether all factual issues have been resolved such that a claimant is clearly entitled to disability benefits. Thus, only if there are no outstanding issues to resolve and it is clear an ALJ must find disability, should a Court fully credit a claimant's testimony and remand for benefits. *Id.* at 1105.

Here, the Court finds the ALJ misevaluated Plaintiff's testimony. Plaintiff's testimony must we reassessed to resolve issues including whether his work activities or volunteer activities such as serving as chair of Oxford house undercut his testimony, or not. The record is not sufficiently developed to make a final assessment at this point. As this Court on appeal does not develop and weigh evidence of record, this case must be remanded to the Commissioner for further proceedings.

The Court accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reassess Plaintiff's testimony, develop the record and redetermine RFC as needed and proceed to the remaining steps of the disability determination process as appropriate.

DATED this 18th day of February, 2025.

BRIAN A. TSUCHIDA
United States Magistrate Judge